IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMELL A. MURPHY,                          )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )          Case No.   17-cv-1154-RJD
                                           )
DAVID MITCHELL, DANIEL PORTER, and)
BART LIND,                                 )
                                           )
            Defendants.                    )

## ORDER

**DALY, Magistrate Judge:**

Plaintiff Jamell Murphy, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). Plaintiff is proceeding on an Eighth Amendment excessive force claim against Defendants David Mitchell, Daniel Porter, and Bart Lind for allegedly assaulting him on June 16, 2017.

This matter is now before the Court on Defendants' Motion for Partial Summary Judgment (Doc. 136). For the reasons set forth below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## Background

Plaintiff's claims arise from an incident that occurred at Menard on June 16, 2017 (Deposition of Jamell Murphy, Doc. 137-1 at 14). On this date, Plaintiff was housed in Gallery 8, a gallery for high aggression inmates, including weapons violators and those who have been found guilty of assaulting staff (*Id.*). Plaintiff's gallery had gym on June 16, 2017 from 10:00 a.m. until around 11:30 a.m. or 12:00 p.m. (*Id.* at 9). Plaintiff had been playing basketball in the gym for an

Page **1** of **10**

hour or so when he and the other inmates were ordered to line up and exit the gym area due to a staff assault that occurred elsewhere in the prison (*Id.* at 14).

In accordance with staff orders, Plaintiff lined up with other inmates from Gallery 8 for a "pat down" search by officers (Doc. 137-1 at 14).   Before being searched, an incident between staff and inmates broke out in the line ahead of Plaintiff (*Id.* at 15).   Plaintiff heard warning shots and Defendant Lt. Mitchell and Lt. Ellis ordered inmates to get on the ground and put their heads on the ground (*Id.*).   Plaintiff went to the ground as ordered, but did not put his head on the ground (*Id.*).   The inmate next to Plaintiff became involved in an altercation with staff and, at one point, staff or the inmate rolled over Plaintiff (*Id.*).   During the incident, Plaintiff was kicked in the face, and Defendant Mitchell instructed Defendant Officer Porter and Officer Doe to "come in there" and they began stepping on Plaintiff's face and neck (*Id.*).   Plaintiff testified he could not breathe and complained to Defendant Mitchell, telling Mitchell the officers were choking him (Doc. 137-1 at 15).   Mitchell did not take any action (Doc. 137-1 at 12, 15).   Plaintiff was cuffed by Porter and Doe while he was on the ground and escorted outside the yard gate to segregation (*Id.* at 15, 18).   Plaintiff was escorted at the direction of Mitchell (*Id.* at 15).   While he was being escorted, Plaintiff was trying to stretch his lungs to breathe, and Porter and Doe began punching him and kneeing him (*Id.*).   Plaintiff recalls that Porter punched him from the right and Doe punched him from the left (*Id.*).

Many of the events testified to by Plaintiff and set forth above are disputed by Defendant Mitchell.   According to Mitchell, while he was attempting to control inmate movement exiting the gym, another inmate, Inmate McCoy, refused to comply with orders to get on the ground (Declaration David Mitchell, Doc. 137-7 at ¶¶ 3-5).   Mitchell attests that he ordered McCoy three times to get on the ground, but he refused (*Id.* at ¶ 5).   McCoy then refused three orders to "cuff

up" (*Id.* at ¶ 6).   Mitchell attests that as he attempted to place handcuffs on McCoy, he struck Mitchell on the left side of his face (*Id.* at ¶ 7).   Mitchell received assistance from Lt. Mennerich and Officer Maze, and placed restraints on McCoy (Doc. 137-7 at ¶ 8).   Major Hughes instructed Mitchell to go the healthcare unit for evaluation of his injuries, and he was there no more than 10 minutes before returning back to the North Upper cell house (Doc. 137-7 at ¶¶ 9-10).   Mitchell attests that he did not tell any correctional staff to beat an inmate or direct them to move to any particular location to do so (Doc. 137-7 at ¶ 12).   Mitchell has no specific recollection of Plaintiff (*Id.*).

Once escorted to segregation, Plaintiff was interviewed by internal affairs (Doc. 137-1 at 19).   Plaintiff was subsequently seen by medical staff, and he told them he had a headache, ear pain, ringing in his ear, and a lacerated and swollen lip (*Id.* at 20).   Plaintiff's medical records indicate that Plaintiff was seen at 11:00 a.m. and document that Plaintiff had an abrasion on his right check and a cut on his lower lip (Doc. 137-2).   His other complaints were not recorded in his medical records.   Plaintiff testified he suffers from migraine headaches, dizziness, and panic attacks since the incident (Doc. 137-1 at 21).   Plaintiff also testified he stills coughs up blood (*Id.*).   Plaintiff testified he was diagnosed with post-traumatic stress disorder (PTSD) following the incident (*Id.* at 5).

### *Identification of Officer John Doe*

On June 23, 2020, Plaintiff moved to substitute Officer Bart Lind in place of Defendant John Doe (Doc. 126).   Plaintiff moved for said substitution after identifying Lind from an array of photographs provided by the IDOC.   Lind asserts that on June 16, 2017 he was scheduled to work security at Pinckneyville Correctional Center ("Pinckneyville") during the 7:00 a.m. to 3:00 p.m. shift (Declaration of Bart Lind, Doc. 137-6 at ¶ 4; *see* Doc. 137-3).   Lind started his shift at

Pinckneyville, however, he went to Menard that day to assist the Menard Intelligence Unit by taking statements for an investigation into an incident that occurred at Menard earlier that day (*Id.* at ¶¶ 4, 6).   Lind went to Menard on June 16, 2017 and signed in at 1:15 p.m. and signed out at 5:15 p.m. (*Id.* at ¶ 7; *see* Doc. 137-4).

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.   *Celotex*, 477 U.S. at 323.   Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).   In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.   *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

Plaintiff is proceeding in this action on an Eighth Amendment claim against Defendants Mitchell, Lind, and Porter for applying excessive, objectively unreasonable force that caused him injury on June 16, 2017.   Defendants characterize Plaintiff's allegations of force into two separate

incidents.   Because Plaintiff has not disputed this characterization, the Court will accept Defendants' characterization.   First, Plaintiff alleges excessive force was used when he was outside the gym and was handcuffed while on the ground.   Second, Plaintiff alleges excessive force was used while being escorted from the gym to the segregation unit.

The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits the "unnecessary and wanton infliction of pain" on prisoners.   *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).   "In cases involving the claimed use of excessive force, 'the core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'." *Outlaw*, 259 F.3d at 837 (quoting *Hudson*, 503 U.S. at 7).   "In conducting this inquiry, a court must examine a variety of factors, including 'the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner.'"   *Id.*   With regard to the last factor, a plaintiff need not demonstrate a significant injury to state a claim for excessive force; however, "a claim ordinarily cannot be predicated on a *de minimis* use of physical force." *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (emphasis added) (citing *Hudson*, 503 U.S. at 5).

### *Defendant Bart Lind*

Defendant Lind asserts he does not work at Menard and was not present at the time the alleged use of excessive force occurred.   Therefore, Lind asserts he is entitled to summary judgment because he had no personal responsibility for any claimed constitutional violation. Plaintiff explains that in an effort to identify Lind as a defendant in this case, Plaintiff was provided photographs of IDOC personnel on three different occasions with the names withheld.

Page **5** of **10**

Lind's photograph was provided in two of these showings and was twice identified as the John Doe Defendant by Plaintiff.   Plaintiff further argues that while documentation has been provided showing Lind's presence at Menard at 1:15 p.m. on June 16, 2017, there is no indication in the record as to when Lind departed Pinckneyville for Menard.

In this instance, even when viewing the evidence in the light most favorable to Plaintiff, the Court cannot find that Lind was personally involved in the incidents at issue that took place on June 16, 2017.   While the Court recognizes the efforts Plaintiff and counsel went through to correctly identify the John Doe defendant, such efforts and photographs are not evidence and this appears to be an instance of mistaken identity.   The evidence before the Court establishes that Lind began his 7:00 a.m. to 3:00 p.m. shift on June 16, 2017 at Pinckneyville.   Lind subsequently traveled to Menard and signed in at 1:15 p.m.   According to Plaintiff's testimony, the incidents at issue occurred prior to this time.   Indeed, Plaintiff was seen in the healthcare unit at 11:00 a.m. Even if Plaintiff had testified or otherwise submitted evidence that Lind was involved in the alleged acts of excessive force, the Court finds it would be unable to credit Plaintiff's testimony. Indeed, courts have indicated that "even on summary judgment the district court should not credit testimony that is inherently incredible," *Simms v. Reiner*, 419 F.Supp. 468, 475 (N.D. Ill. 1976), or "irrefutably contradicted by documentary evidence," *Stewart v. RCA Corp.*, 790 F.2d 624, 628 (7th Cir. 1986), which has occurred in this instance.

The Court finds sufficient evidence in the record that Lind was not present at Menard during the time Plaintiff alleges he was assaulted.   Therefore, Lind was not personally responsible for any purported constitutional violation and is entitled to summary judgment[1].

---

[1] The Court need not consider the argument of qualified immunity as to Defendant Lind because it finds that Lind did not violate Plaintiff's constitutional rights.

***Defendant Daniel Porter***

Defendant Porter does not set forth any argument that he is entitled to summary judgment as to Plaintiff's claim that Porter used excessive force while escorting Plaintiff from the gym to segregation on June 16, 2017.   Thus, this claim will proceed in this case.

Defendant Porter, however, asserts he is entitled to summary judgment as to Plaintiff's claim that excessive force was used while Plaintiff was outside the gym.   Porter contends he is entitled to summary judgment as to this claim because Plaintiff had been given numerous orders to put his head on the ground, but refused to do so.   Porter argues Plaintiff's failure to follow this order and lack of serious injury demonstrate the force used was not excessive.

The central inquiry in claims of excessive force is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).   The Court cannot find as a matter of law that the force employed by Defendant Porter was applied in good faith and not for purposes of causing harm.   Although it appears Plaintiff may have failed to adhere to an order to put his head on the ground, the Court cannot find that stepping on Plaintiff's face and neck and causing him to have difficulty breathing was an appropriate use of force, in consideration of the *Fillmore* factors, cited above.   The Court also disagrees with Defendant's characterization that the force applied was minimal because Plaintiff suffered only a cut to his lip and an abrasion to his cheek.   Plaintiff testified he has enduring medical issues from the incident, including headaches, dizziness, and panic attacks

For these reasons, the Court finds a reasonable jury could find Defendant Porter used excessive force against Plaintiff on June 16, 2017 both outside the gym and while Plaintiff was being escorted to segregation, and Defendant Porter is not entitled to judgment as a matter of law.

Page **7** of **10**

Porter is not entitled to qualified immunity as it was clearly established at the time of the events in question that applying force in a manner inconsistent with maintaining or restoring discipline implicates an inmate's constitutional rights.

### Defendant David Mitchell

Defendant Mitchell asserts he is entitled to summary judgment because there is no evidence he attacked Plaintiff at any time and failure to protect was not a claim brought in this suit. Mitchell also argues summary judgment in his favor is appropriate because Plaintiff refused several orders to keep his head on the ground and the officers were required to restrain Plaintiff outside of the gym. Mitchell further notes that he was not present while Plaintiff was being escorted from the gym to segregation.

As to Defendant Mitchell's argument that he was not involved in the alleged attack and Plaintiff did not plead a failure to protect claim, the Court notes that liability under § 1983 is predicated on a defendant's personal involvement in the alleged constitutional violation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citations omitted). To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (quoting *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Thus, Plaintiff's failure to plead a failure to protect claim is not fatal to his case against Defendant Mitchell. Plaintiff's excessive force claim is premised on Mitchell's direction, facilitation and approval of the attacks that purportedly took place on June 16, 2017. This is sufficient to state a claim.

Next, the Court considers Defendant Mitchell's argument that summary judgment is warranted because the force used outside of the gym was appropriate given the circumstances.

Similar to the Court's analysis with regard to Defendant Porter, the Court finds that although Plaintiff may have failed to adhere to an order to put his head on the ground, a reasonable jury could find that the force employed by Porter and the unknown officer was excessive given the circumstances.   With regard to Defendant Mitchell, there is evidence that he directed and observed the attacks, and ignored Plaintiff's requests for help when Plaintiff told him he could not breathe.   Given the circumstances, the Court cannot find, as a matter of law, that the force applied was reasonable or that Defendant Mitchell's failure to act was appropriate.   Plaintiff shall proceed on his excessive force claim against Defendant Mitchell related to the events that occurred outside of the gym on June 16, 2017.   Mitchell is not entitled to qualified immunity on this claim as it was clearly established at the time of the events in question that the failure to act when force is being applied in a manner inconsistent with maintaining or restoring discipline implicates an inmate's constitutional rights.

Plaintiff shall not proceed on a claim against Defendant Mitchell related to the use of force while he was being escorted from the gym to segregation.   The evidence is insufficient to establish that Mitchell directed or was aware of any attack, or ignored any calls for help during this alleged attack.

### Conclusion

Based on the foregoing, Defendants' Motion for Partial Summary Judgment (Doc. 136) is **GRANTED IN PART AND DENIED IN PART**.   The Clerk of Court is directed to enter judgment in favor of Defendant Bart Lind and against Plaintiff Jamell Murphy at the close of this case.

Plaintiff shall proceed in this matter on an Eighth Amendment excessive force claim against Defendants David Mitchell and Daniel Porter related to incidents that occurred on June 16,

2017, as fully set forth in this Order.

**IT IS SO ORDERED.**

**DATED: March 23, 2021**

*s/  Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**